Fred Norton (CA SBN 224725)
David W. Shapiro (CA SBN 219265)
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900
fnorton@nortonlaw.com
dshapiro@nortonlaw.com

Attorneys for Movant
John Doe

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| John Doe,<br><br>                Movant,<br><br>        v.<br><br>UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>                Respondent. | Case No.<br><br>**MOTION IN SUPPORT OF CUSTOMER CHALLENGE PURSUANT TO RIGHT TO FINANCIAL PRIVACY ACT, 12 U.S.C. § 3410** |

Pursuant to the Right of Financial Privacy Act, 12 U.S.C. § 3410, pseudonymous party John Doe[1] moves this Court for an order preventing the United States Securities and Exchange Commission from obtaining access to Doe's financial records held at East West Bank, Fremont Bank, Umpqua Bank, and Wells Fargo Bank, N.A. ("Respondent Banks").  The subpoenas that the SEC has served on the Respondent Banks should be quashed, in whole or in part, for three reasons.

*First,* the SEC has not complied with 12 U.S.C. § 3405(2), which requires that the government provide the subpoenas to Mr. Doe along with a notice that states "with reasonable specificity the nature of the law enforcement inquiry."  The notice merely states that the SEC has entered a formal order of investigation concerning Coherent, Inc. and that "the Commission deems certain acts and practices to be in possible violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder."  That is not specific at all, and certainly not "reasonable specificity."

*Second*, the subpoenas seek records that are not relevant to the SEC's investigation, nor is there any reason to believe that they are relevant, as required by 12 U.S.C. § 3405(1).  The subpoenas are not limited in time or scope but rather are staggeringly overbroad:  they demand every record of every account, every transaction, and every online interaction Mr. Doe and his wife have ever had with any of the four Respondent Banks from the beginning of time through the present date.  In contrast, the SEC's investigation, as it has been described to Mr. Doe, concerns possible insider trading in the publicly traded securities of Coherent., Inc. between November 2020 and November 2021.

*Third,* by seeking every single document associated with Mr. Doe's accounts, the SEC has failed to satisfy the requirement of 12 U.S.C. § 3402 that the documents be "reasonably described."

## I.    FACTS

Mr. Doe is a successful businessman and a day-trading investor.  Doe Decl. ¶ 7.  With respect to securities investment, his general practice is to conduct online research, read analyst reports, and study price charts on companies that he believes may appreciate in value, and then to establish short term positions in those securities through his brokerage accounts.  *Id.*  ¶ 7.  He trades in a wide range of

---

[1] Simultaneous with the filing of this motion, Movant is also filing a motion for leave to proceed under a pseudonym, which defendant SEC has stated it does not oppose.

Doe Motion Pursuant to Challenge provisions of Right to Financial Privacy Act

1  securities, sometimes holding positions in scores of companies at once.  *Id.* ¶ 7.   Mr. Doe

2  unequivocally denies that he possessed any material inside information about any of the companies he

3  traded in, or that he engaged in insider trading at any time.  *Id.* ¶ 8.

4        In January 2021, based on his research, Mr. Doe purchased call options on Coherent stock.  *Id.* ¶

5  9.  It was his first ever investment in Coherent and it yielded a profit.  *Id.* ¶ 9.  Through 2021 several

6  companies were publicly engaged in a bidding war to acquire Coherent, which Mr. Doe followed as part

7  of his research.  *Id.* ¶ 10.  During that time frame, up until about May 19, 2021, Mr. Doe continued to

8  establish and close positions in Coherent, some of which were profitable and some of which were not.

9  *Id.* ¶ 10.  Mr. Doe has not purchased or sold any Coherent securities since September 2021.  *Id.* ¶ __.

10        Mr. Doe also researched and purchased securities in one of the unsuccessful bidders for

11  Coherent, Lumentum.  *Id.* ¶ 12.  After Lumentum's acquisition of Coherent failed, Mr. Doe identified

12  other potential acquisition targets for Lumentum in that industry (optics and photonics), one of which

13  was a company called Neophotonics.  *Id.* ¶ 13.  Based on his belief that Lumentum still would pursue

14  an acquisition in the optics and photonics industry, Mr. Doe acquired a position in Neophotonics in fall

15  2021.  On November 4, 2021, Lumentum announced that it would acquire Neophotonics, and Mr. Doe

16  closed his position that day.  *Id.* ¶ 13.  Mr. Doe has not purchased or sold any Neophotonics securities

17  since November 4, 2021.  *Id.* ¶ 14.  All of Mr. Doe's trades in Lumentum, Coherent, and Neophotonics

18  occurred between March 2020 and November 2021, and all are reflected in the brokerage account

19  statements, dating back to 2012, that he personally produced to the SEC through counsel.  *Id.* ¶ 14.

20        The funds that Mr. Doe used to purchase securities in Lumentum, Coherent, and Neophotonics

21  did not originate from any of the Respondent Banks – East West Bank, Fremont Bank, Umpqua Bank,

22  or Wells Fargo Bank, N.A.  In addition, none of the proceeds of those sales were deposited in any of the

23  Respondent Banks.  All of Mr. Doe's trades in Lumentum, Coherent, and Neophotonics were conducted

24  using his Schwab brokerage account or his Robinhood brokerage account.  *Id.* ¶ 15.  All purchases in

25  the Schwab account were funded through the account itself – that is, through margin loans or through

26  the sale of other securities.  *Id.* ¶ 15.  No sales proceeds were transferred from the Schwab account to

27  any bank.  *Id.* ¶ 15.  There were never any funds exchanged between the Schwab account and any

28

Respondent Bank.  *Id.*  ¶ 15.  Except for a transfer of funds from Bank of America (which is <u>not</u> one of the four Respondent Banks) into the Schwab account in 2020 or 2021, there were never any funds exchanged between the Schwab account and any bank.  *Id.*  ¶ 15.  For the Robinhood account, some funds were transferred between Mr. Doe's brokerage account and his bank account at Bank of America, *id.*  ¶ 16.  No funds were ever transferred between the Robinhood account and any of the four Respondent Banks.  *Id.*  ¶ 16.

On September 16, 2022, the SEC served a subpoena on Mr. Doe, seeking documents related to his trading in Lumentum, Coherent, and Neophotonics.  Mr. Doe complied with the subpoena and produced his brokerage account statements and trading records dating back to 2012, as well as other documents.  Norton Decl. ¶ 2, Ex. A (SEC subpoena to Mr. Doe).  In response to the SEC's demand for three years of bank account records for all his bank accounts, Mr. Doe produced documents sufficient to identify all his bank accounts while objecting that the bank records were irrelevant "because they do not reflect trades in the securities of the three companies identified in your subpoena."  Norton Decl. ¶ 3, Ex. B (response to SEC subpoena).  Mr. Doe's counsel requested that the SEC examine the account statements provided and then provide further information about why additional account statements are relevant.  *Id.*  Rather than establish the relevance of those bank records, the SEC subpoenaed the Respondent Banks directly and sent Mr. Doe's counsel the notice packet on October 26, 2022.

The notice packet describes the investigation in the most general terms, explaining only that the Commission entered a formal order of investigation, "In the Matter of Coherent, Inc. (TISO)" and that the order "states that the Commission deems certain acts and practices to be in possible violation of: Section 10(b) of the Exchange Act and Rule 10b-5 thereunder."  Norton Decl. ¶ 4, Ex. C (SEC subpoenas to Respondent Banks, at 1)  The formal order is not included in the notice packet, but the SEC provided it to Mr. Doe's counsel.  It adds no explanation of the "certain acts and practices," except that "[t]he Commission has information that tends to show that from at least November 2020, in possible violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, certain persons and/or entities … directly or indirectly, may have been or may be, among other things, trading in the securities of COHR [Coherent, Inc.] on the basis of material nonpublic information, or disclosing to others

material nonpublic information regarding COHR, in breach of a fiduciary or other duty arising out of a relationship of trust and confidence."  Norton Decl. ¶ 5, Ex. D.

The subpoenas to Respondent Banks seek records related to accounts held by Mr. Doe and Mrs. Doe.  (Mrs. Doe has no separate accounts – all her accounts are held jointly with Mr. Doe.  Doe Decl. ¶ 4.)  The four subpoenas are all identical and are unlimited in time or scope.  As for time, the subpoenas seek "all Documents created during, or Concerning, the period from January 1, 2019, or the earliest time for which records exist, _whichever is earlier_, to the date of this subpoena."  Norton Decl. ¶ 4, Ex. C (SEC subpoenas to Respondent Banks, at 3) (emphasis added).  For every account Mr. and Mrs. Doe have ever had with each of the Respondent Banks, the subpoenas seek

1. "all account transaction data,"

2. "all account opening and authority information,"

3. "all monthly account statements,"

4. "all supporting documents for all account transactions in the monthly account statements," such as canceled checks, deposit slips, etc.,

5. "All Documents sufficient to identify all extensions of credit" such as loan applications, letters of credit, and financial statements,

6. "All Documents sufficient to identify safety deposit boxes,"

7. "All Documents and Communications (including emails) between bank personnel" and Mr. or Mrs. Doe, and

8. "All Documents sufficient to show online access to the accounts," including "date, time, session length, transactions occurring during online session, and the ISP [*sic*] address used to access the account for each session."

Norton Decl. ¶ 4, Ex. C at 4-5.

The SEC did not subpoena only Mr. Doe and the four Respondent Banks.  The SEC also served a subpoena on Bank of America, to which Mr. Doe made no objection, and from which the SEC presumably has already obtained Mr. Doe's records.  Norton Decl. ¶ 5, Ex. D (SEC subpoena to Bank of America).  Mr. Doe had banked with Bank of America for over 20 years, but after it received the SEC

subpoena, it closed Mr. Doe's account.  Mr. Doe moved the balance from Bank of America to East West Bank.

On October 31, 2022, Mr. Doe's counsel notified counsel for the SEC that Mr. Doe would move to quash the subpoenas to the Respondent Banks, and on Thursday, November 3, 2022, Mr. Doe's counsel confirmed in writing with the SEC that the deadline to move would be November 7, 2022. Norton Decl. ¶ 6.

## II.    ARGUMENT

The Right to Financial Privacy Act (RFPA) was passed in 1978 in response to the United States Supreme Court's decision in *United States v. Miller*, 425 U.S. 435 (1976), which held that bank customers did not have a constitutionally protected privacy interest in their personal bank records.  *See* H.R. Rep. No. 1383, 95th Cong., 2d Sess. 33-34 *reprinted in* 1978 U.S. Code Cong. & Admin. News 9273, 9305-06.  The purpose of the RFPA was to recognize that consumers do have significant privacy interests in their financial records and dealings with banks and to strike a balance between those interests and the legitimate needs of law enforcement.  *See id.*

As relevant here, the RFPA provides that the SEC cannot "have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution," 12 U.S.C. § 3402, unless

- "the financial records are reasonably described," *id.*;
- there is "reason to believe that the records sought are relevant to a legitimate law enforcement inquiry," 12 U.S.C. § 3405(1); and
- the SEC has provided the customer with the subpoena and a notice that "state[s] with reasonable specificity the nature of the law enforcement inquiry" along with other procedural formalities, 12 U.S.C. § 3405(2).

The RFPA provides a specific procedure for challenging an agency subpoena that seeks a consumer's financial records.  The consumer must submit an affidavit or sworn statement that he or she is a customer of the financial institution and provide reasons why the records are not relevant to the legitimate law enforcement inquiry described in the notice, or why there has not been substantial

compliance with the RFPA's procedural requirements.  *See* 12 U.S.C. § 3410(a).  If the consumer makes this initial showing, the court must order the agency to respond and may conduct any additional proceedings it deems appropriate.  *See* 12 U.S.C. § 3410(b).  While the consumer has an initial burden of production, "'[t]he ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government.'" *In re Blunden*, 896 F. Supp. 996, 999 (C.D. Cal. 1995) (quoting *Breakey v. Inspector Gen. of U.S. Dep't of Agric.*, 836 F. Supp. 422, 425 (E.D. Mich. 1993).

### A.  The SEC Cannot Enforce the Subpoenas on Respondent Banks Because the Notice Packet Does Not Describe the Inquiry "With Reasonable Specificity"

The RFPA places on the consumer an initial burden to come forward with reasons why the documents sought are not relevant to the stated in law enforcement inquiry.  To be able to meet that burden, the agency subpoenaing the records must give the customer some idea of the nature and scope of the inquiry.  For that reason, the agency seeking a consumer's financial records must first describe the investigation with "reasonable specificity," 12 U.S.C. § 3405(2); that is, with enough specificity that a consumer can understand what financial records are relevant to the inquiry, and why.  The SEC has not met this requirement.

The notice packet here does nothing more than identify a company and baldly state it thinks there are possible violations of Section 10(b) and Rule 10b-5.  That does not provide Mr. Doe with reasonable notice, particularly given that those particular provisions are interpreted "expansively" to cover a wide range of conduct.  *See e.g., United States v. Russo*, 74 F.3d 1383, 1390 (2d Cir. 1996).  For that reason alone, the SEC has failed to substantially comply with the procedural requirements of the RFPA, and the subpoena must be quashed.

The SEC furnished Mr. Doe with the SEC's formal order, but it adds very little to any understanding of the investigation:  the conduct under investigation dates "from at least November 2020" and the conduct "may have been or may be, among other things," insider trading.  Those additional details still lack the required specificity.  The notice packet and order do not provide Mr. Doe any information that would allow him to assess why he is suspected of insider trading or why his financial records at the four Respondent Banks are relevant to possible insider trading in Coherent stock.

1   Thus, even if the notice packet had included the formal order – and it did not – still the SEC would have

2   failed to describe the investigation with reasonable specificity.

3          In the section that follows, Mr. Doe nonetheless endeavors to address relevance, as the RFPA

4   requires him to do to protect his interest in his financial privacy.  Given the lack of detail in the SEC's

5   description, however, Mr. Doe cannot be expected to address the relevance of financial records created

6   before "November 2020" (when the conduct under investigation apparently began) nor can he be

7   expected to address the relevance of financial records that might have some connection to trading in

8   securities other than Coherent (the only company whose securities are subject to the formal order).

9   **B.  The SEC Cannot Enforce the Subpoenas Because None of Mr. Doe's Financial
10       Records at the Four Respondent Banks Have Any Relevance to Trading in Coherent
         Securities**

11         The SEC may argue that the standard for relevance under the RFPA is low – it need only show

12  that "a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable

13  belief that the records sought are relevant to that inquiry."  12 U.S.C. § 3410.  But "the phrase 'reason to

14  believe' does not mean any reason, no matter how theoretical or remote."  *Hunt v. U. S. Sec. & Exch.

15  Comm'n,* 520 F. Supp. 580, 603 (N.D. Tex. 1981).  And the SEC must establish that its belief that the

16  records are relevant is "a reasonable belief" – "[a] mere belief is not enough."  *See Davidov v. U.S.

17  S.E.C.,* 415 F. Supp. 2d 386, 391 (S.D.N.Y. 2006) (quoting *Matter of U.S. S.E.C. Priv.

18  Investigation/Application of John Doe Re Certain Subpoenas,* No. M8-85 (MBM), 1990 WL 119321, at

19  *2 (S.D.N.Y. Aug. 10, 1990).

20         There is no reason for the SEC to subpoena Mr. Doe's financial records from the Four

21  Respondent Banks at all.  Mr. Doe agrees he bought and sold Coherent securities, but the funds for his

22  purchases did not come from the Respondent Banks and the proceeds of those sales did not go to the

23  Respondent Banks.  The SEC has Mr. Doe's brokerage account statements and his Bank of America

24  statements and can confirm these facts for itself.  Consequently, the financial records held by the

25  Respondent Banks do not have, and cannot have, any relevance to the SEC's investigation into possible

26  insider trading in Coherent securities, by Mr. Doe or by anyone else.  This would be true even if the

27

28

subpoenas were considerably narrower, limited to the time frame fixed by the SEC for its own investigation and limited to documents concerning funds that had some connection to trading in Coherent securities.

The showing that the SEC has made in other cases under the RFPA illustrates what is required to establish a "reasonable belief" that a consumer's financial records are relevant.  For example, in *Davidov*, the SEC was investigating possible insider trading in a company called NBTY.  Morris Gad, a friend of an NBTY director, had purchased NBTY stock and options immediately before the company announced a record-breaking quarter.  The SEC's investigation revealed that (a) Davidov (an associate of Gad's in the jewelry business) had previously transferred $150,000 worth of NBTY shares to Gad, which Davidov claimed (implausibly) was payment for diamonds; (b) Davidov also purchased NBTY shares immediately before NBTY's announcement and on the same day as Gad; (c) Davidov claimed he was unaware of his brother's trading account despite evidence that Davidov transferred over $330,000 into his brother's account; and (d) there were a number of payments between Gad and Davidov just under $10,000.  *Davidov,* 415 F. Supp. 2d at 388-90, 392.  With that detailed information, the SEC argued that it had a reasonable belief that Davidov's bank records were relevant to its investigation, and the court agreed.  *See id.* at 392.  *See also Crypto Traders Mgmt., LLC v. United States Sec. & Exch. Comm'n,* No. 1:21-MC-00375-BLW, 2021 WL 1758692, at *2 (D. Idaho May 4, 2021) (denying motion to quash subpoena for financial records where the SEC had evidence that movant operated an illegal investment scheme; movant moved funds invested with the scheme among bank accounts, including personal accounts; and he "withdrew large amounts of cash from [company] bank accounts and spent investor money to purchase real estate, vehicles, and other items"); *Nelson v. U.S. S.E.C.,* No. C08-80080MISCJFHRL, 2008 WL 2444794, at *2 (N.D. Cal. June 16, 2008) (SEC established reasonable belief as to relevance where movant had pled guilty to mail fraud in connection with receipt of kickbacks and had admitted that he shared those funds with co-conspirators; SEC had basis to suspect that movant's conduct also violated the securities laws and needed access to movant's bank records "to trace the proceeds of possibly illegal transactions for disgorgement and penalty purposes").

1    Here, in contrast, Mr. Doe purchased shares in Coherent based on his own research, did not use

2    any funds from any of the Respondent Banks to finance those purchases, and did not deposit the

3    proceeds of those sales in the Respondent Banks.  The SEC cannot have a "reasonable belief" that Mr.

4    Doe's records at those banks are relevant to its investigation into insider trading of Coherent securities.

5    For this reason as well, the subpoena should be quashed.

6    **C.   Even If the Subpoenas Sought Relevant Information, They Would Be Subject to Modification Because They Are Overbroad**

7

8    Even if the SEC could establish that the subpoenas seek some relevant documents – and for the

9    reasons stated above, it cannot – the subpoenas still would have to be modified because their scope is so

10   overbroad.

11   Courts have recognized that the RFPA seeks to strike a balance between the legitimate law

12   enforcement needs and consumers' privacy interest in their financial dealings.  Thus, in *United States*

13   *Sec. & Exch. Comm'n v. Baian*, the SEC was investigating an unregistered investment company that was

14   accused of stock manipulation.  No. CV 09-7451-DDP(CTX), 2009 WL 10676276 (C.D. Cal. Nov. 24,

15   2009).  The SEC sought the financial records of one of the company's managers who had knowledge of

16   the company's manipulation scheme, based on its belief that his testimony had been influenced through

17   improper payments (which he had characterized as previously arranged bonuses).  *See id.* at *3.  Much

18   as it has with Mr. Doe, in that case the SEC sought " [a]ll documents" that related to any account in the

19   consumer's name or for which he had signatory authority or a beneficial interest, including "account

20   opening documents, customer identification information, deposit and withdrawal documentation, trading

21   and/or transaction confirmations, margin agreements, contract, monthly or other periodic statements of

22   account, incoming and outgoing wire transfer records and instructions, and/or any communications

23   between [the consumer's bank] and any other person that relate to said accounts."  *Id.*

24   On a motion to quash, the court found that "a reasonable belief exists that *some* of the requested

25   records may touch on the issues raised by the Commission; as crafted, however, the subpoena is overly

26   broad and thus contravenes the balance the RFPA seeks to strike."  *Id.* (emphasis in original) (citing

27   *Neece v. Internal Revenue Service*, 922 F.2d 573, 575 (10th Cir. 1990).)  The court then narrowed the

28

1    subpoena to reach only deposit documentation for accounts in the consumer's name or for which he had

2    signatory authority or a beneficial interest.  *Id.*

3         In other cases, the subpoenas satisfied the relevance requirement because they excluded plainly

4    irrelevant categories of records, rather than seeking "all documents."  *See Matter of U.S. S.E.C. Priv.*

5    *Investigation*, 1990 WL 119321, at *2 (in finding that SEC subpoena sought relevant documents, noting

6    that subpoena excluded transactions under $500 ($1135 in 2022 dollars), "which assures that purely

7    personal transactions in small amounts will not be disclosed").

8         Here as well the subpoenas are clearly overbroad, if relevant at all.  The Commission's formal

9    order states that it is investigating insider trading in Coherent dating back to November 2020, and there

10   is no dispute that Mr. Doe's trading in Coherent occurred entirely in 2021 and was complete by

11   September 2021.  There is no reason for the SEC to seek records going years back to the beginning of

12   the accounts' existence.  Nor is there reason to seek "all monthly account statements," "all account

13   transaction data," "all supporting documents for all account transactions," "All Documents sufficient to

14   identify all extensions of credit," "All Documents sufficient to identify safety deposit boxes," "All

15   Documents and Communications (including emails) between bank personnel" and Mr. Doe or his wife,

16   and "All Documents sufficient to show online access to the accounts."  If the SEC is permitted to

17   subpoena Mr. Doe's financial records, it should be limited to those specific records that the SEC

18   *demonstrates* relate to the facts it shows justify its investigation, not every document concerning every

19   account he has ever held.

20   **D.  Even If the Subpoenas Sought Relevant Information, They Would Be Subject to**
     **     Modification Because They Fail to Describe the Records With Specificity**

21

22        When confronted with overbroad agency subpoenas like the ones directed to the Respondent

23   Banks, courts have also held that the subpoenas had to be modified because they failed to meet the

24   requirement of 12 U.S.C. § 3402 that the documents be "reasonably described."  As one court noted in

25   response to an SEC subpoena, "the sheer breadth of the scope of the subpoenas in question cautions

26   against a finding that they were drafted such as to define the records sought as specifically as possible."

27   *Hunt v. U. S. Sec. & Exch. Comm'n*, 520 F. Supp. 580, 604 (N.D. Tex. 1981).  The same is true here.

28

Similarly, in *In re Blunden*, the movant complained that "the request for production of documents is not specific enough, and constitutes a fishing expedition."  896 F. Supp. at 1000.  The court agreed and allowed the SEC to enforce the subpoena only after it had been narrowed considerably.  *Id.*

The subpoenas to the Respondent Banks do not describe the records specifically, nor do they explain how the records sought relate to the SEC's as yet unidentified investigation.  The requests are simply drafted to capture every single document the banks may have from any account that Mr. Doe has ever had with that bank.  Even if there were reason to believe that one or more of the banks had some relevant records of Mr. Doe's – and there is not – the SEC should be required to reasonably describe those documents as section 3402 expressly requires.

### E.   The Subpoenas Should be Quashed Because the SEC Failed to Disclose the Nature of its Investigation and the Relevance of its Requests with Doe

After the SEC subpoenaed Mr. Doe's Bank of America account, that bank closed the account, forcing Mr. Doe to transfer the proceeds into a new account at East West Bank.  Doe Decl. ¶ 5.  When asked for bank account records directly, Mr. Doe provided the names of his bank accounts but declined to provide his bank account records without some further explanation of why they were relevant. Norton Decl. ¶ 3, Ex. B.  There is no reason to believe Mr. Doe would have declined to provide bank records, if the SEC had done so, but instead of providing that information, the SEC subpoenaed the banks, exposing Mr. Doe to further interference with his business, personal, and investment transactions.

The SEC's prior subpoena to the Bank of America already apparently disrupted Mr. Doe's financial accounts; there is no reason for the SEC to have done so again, at least without explaining the relevance of bank documents to its investigation – the same showing it must make to this Court.  *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (subpoena may be quashed if it discloses confidential commercial information).

### III.    CONCLUSION

For the reasons stated above, the subpoenas to the four Respondent Banks should be quashed, or in the alternative, significantly narrowed to apply only to records shown to be relevant to an investigation of trading in Coherent stock in 2020 and 2021.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  November 7, 2022

Respectfully submitted,

THE NORTON LAW FIRM PC


*/s/ Fred Norton*
Fred Norton

Attorneys for Movant
John Doe